BRAY (WOODSUM v.). See Case No. 17,-998.

---

## Case No. 1,821.

### The BRAZOS.

[14 Blatchf. 446.][1]

Circuit Court, D. Connecticut. May 15, 1878.

TOWAGE — BREACH OF CONTRACT — WHAT CONSTITUTES — NEGLIGENCE — WHAT CONSTITUTES.

1. In a suit founded on an alleged breach of a contract of towage, negligence or unskilfulness in the tug must be shown; and the tug is not negligent, if she exercises that degree of caution and skill which prudent navigators usually employ in similar services.

2. Where the master of a tug intended to reach a bar at high water, with his tow, and would, if he had done so, have found sufficient water there to take his tow across the bar safely, but miscalculated, and reached the bar after high water, and his tow grounded and was damaged: Held, that such miscalculation was negligence, for which the tug was responsible.

[See The Margaret, Case No. 9,068, affirmed in 94 U. S. 494; Transportation Line v.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

Hope, 95 U. S. 297; The Trojan, Case No. 14,184.]

[On appeal from the district court of the United States for the district of Connecticut.

[In admiralty. Libel against the tug Brazos for breach of a contract of towage. There was decree for libellant in the district court (case not reported), and the owners of the tug appeal. Affirmed.]

Charles R. Ingersoll and Franklin A. Wilcox, for libellant.

Charles E. Perkins, for claimants.

BLATCHFORD, Circuit Judge. It is contended, on the part of the appellants, that the evidence taken on their part, since the trial in the district court, shows that the captain of the tug could not safely have left one or two of the boats outside of the bar while he crossed, as he could not have returned in time to have taken them over on the ebb tide then running; that, as the Grace Williams drew the most water, it would have been necessary to take her over first; and that either one or both of the other two, if left outside over that tide, would, probably, have been lost. It is argued, for the appellants, that the decision of the district court was placed solely on the ground that the tug ought not to have taken the three boats across, all abreast, at the same time, and that that objection is removed by the new testimony.

It is, undoubtedly, true, that, in a case of this kind, the alleged breach of a contract of towage, the libellant must show negligence or unskilfulness in the tug; and that the tug is not negligent, if she exercises that degree of caution and skill which prudent navigators usually employ in similar services. Under this rule, it is contended, for the appellants, that there is no evidence, in this case, of negligence or unskilfulness on the part of the tug; that the captain, when he reached the bar, was of opinion, from his observation, that there was water enough for the tug and the three boats to pass over it safely abreast; and that the disaster occurred because the Williams grounded on the extreme left, and because that caused the stern lines from the tug to the Monmouth to break. The utmost that the expert testimony on the part of the appellants shows is, that, the tug having reached the bar with the boats, it was the best judgment to try and take them all across, and not to take them across singly, and not to leave any one outside, but to take them across in the manner in which they were taken. But, the difficulty was back of this. The wreck which narrowed the channel had been there some days. It is not shown that its presence was unknown or unexpected to the captain of the tug, or that he expected, on leaving New Haven, to find a wider channel than he did find. Nor

is it shown that he expected to find a greater depth of water at the place and at the stage of the tide at which he attempted to cross, than he did find, or that anything presented itself to him, as to obstruction, or width of channel, or depth of water, which he did not previously know or was not bound to know. Under these circumstances, he proceeded to take across the bar a tow 79 feet wide, one of the vessels in which, the Williams, drew about 9 feet of water. He testifies, as his calculation, that there were 9½ feet of water, at the time he made the attempt, for a width of from 150 to 200 feet. If this were so, it was clearly negligence for him to go so far to the left, out of the 9½ feet depth of water, as to ground the Williams, and cause the ensuing disaster. For, on this evidence, there was width enough and depth enough for the whole to have gone safely through, if he had not deviated too far to the left. There is no pretence that this deviation was not the act of his will, in navigating the tug and tows. But, if he is mistaken, and if there was not, at the time, water enough to have floated the Williams over, without grounding, it was negligence to make the attempt, as he was bound to know how much water the Williams drew, and what depth of water there was at the stage of tide then existing. He testifies that it would not have been expedient to lie outside and wait for higher water. Before he left New Haven, he knew this, and knew, also, that he must reach the bar in time to cross it before the ebb tide had lowered the water so far that the Williams would strike. He testifies, that he noticed, while in the Sound, proceeding eastward, that the tide was running ebb; that he discovered that when 4 miles to the west of the mouth of the river; that he began making observations as to the state of the tide, by marks on the shore, when two miles west of the light; that he was towing at the rate of 4 miles an hour; that he remembers that he calculated that it would be high water that day; that he never starts from New Haven for Saybrook, with a tow, without knowing when it is high tide at Saybrook; and that he knew that a bar would form off the stern of the wreck. It is apparent, from this testimony, that the captain of the tug intended to reach the bar at high water, and calculated, before leaving New Haven, that he would do so, and timed his starting from New Haven with a view to secure that result. If he had done so, as it is shown there would have been, at high water, ten feet depth of water on the bar, for a space of from 150 to 200 feet in width, west of the wreck, it is plain that the Williams would not have grounded where she did ground, and that the whole flotilla would have crossed in safety. By his own confession, he miscalculated. Such miscalculation was negligence. The disaster was not an "inevitable accident," as is set up in the answer.

There must be a decree for the libellant, in affirmance of the decree of the district court, with costs.